Filed 6/22/22  P. v. Charles CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL CHARLES,<br><br>        Defendant and Appellant. | D079191<br><br><br>(Super. Ct. No. PLAW1001) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael S. Groch, Judge.  Affirmed.

Charles R. Khourey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Daniel Rogers, Assistant Attorney General, Eric A. Swenson and Charles C. Ragland, Deputy Attorneys General for Plaintiff and Respondent.

INTRODUCTION

Michael Charles, a convicted sex offender, served 120 days in local custody in San Diego County for parole violations after he disabled his GPS

monitoring device, absconded from parole supervision in Shasta County, and moved without permission to San Diego County. When he was released, he failed to comply with orders to report for supervision in Shasta County and instead went to a parole office in San Diego County. There, he refused the parole agent's orders to put on a GPS monitoring device and return to Shasta County. Although he admitted at his parole revocation hearing that he did "refuse," he asserts substantial evidence does not support the trial court's finding that he willfully violated parole. We affirm the judgment.

FACTUAL AND PROCEDURAL BAGKROUND

In 2015, Charles was convicted in Shasta County of arson (Pen. Code,[1] § 451, subd. (c)), sexual battery (§ 243.4, subd. (a)), and rape of an intoxicated person (§ 261, subd. (a)(3)). In April 2019, after serving his sentence of four years in state prison, he was released on parole with supervision in Shasta County until December 2022. Because of his arson and rape convictions, he was required to register as an arson offender (§ 457.1) and sex offender (§ 290), and to participate in continuous electronic monitoring by wearing a GPS monitoring device.

Charles violated parole approximately 14 times in a period of less than two years, between April 2019 and May 2022. In March 2021, he disabled his GPS monitoring device, absconded from parole supervision in Shasta County, and moved without permission to San Diego County. He did not register as an arson offender or sex offender when he came to San Diego County. He was arrested in San Diego County, admitted he violated his parole conditions, and was sentenced to serve a stipulated term of 120 days in local custody. He

---

1    All further unspecified statutory references are to the Penal Code.

2

was ordered to report to the parole office in Shasta County, within one business day of his release.

Charles was released from the San Diego Central Jail on Friday, April 30, 2021. He timely reported for parole supervision, on Monday, May 3, 2021, but, instead of Shasta County, he went to a parole office in San Diego County. He told Parole Agent Matthew Holmes he wanted to stay in San Diego County for the remainder of his parole. Agent Holmes explained that placement in San Diego County was not possible because the house where Charles wanted to live was not approved due to its proximity to multiple schools and a bus stop. He told Charles he would need to place a GPS device on Charles' ankle, and would give Charles a bus ticket to Shasta County to report to the parole office there. Charles refused and said he would prefer to go back to jail in San Diego County. Agent Holmes placed Charles in custody and transported him to the San Diego Central Jail.

On May 7, 2021, Agent Holmes and Parole Agent Troy Barker, Charles' parole agent in Shasta County, executed a petition for revocation of parole pursuant to section 3000.08.[2] For reasons that are not clear, the petition was not filed with the trial court. But it is undisputed the parole department emailed a copy of the petition to both defense counsel and the trial court in a timely manner.[3] Charles entered a denial of parole violation on June 2.

---

[2] We hereby grant Charles' unopposed motion to augment the record with a copy of the Petition for Revocation. (See Cal. Rules of Court, rule 8.155.)

[3] Defense counsel raised an objection based on the failure to file the petition at the subsequent evidentiary hearing. The trial court found the parole agency's failure to file the petition was a violation of section 3000.08, subdivision (f), but concluded there was no prejudice to Charles and declined

At an evidentiary hearing on June 9, 2021, Agent Holmes, Charles and his brother, Malcolm, testified. Based on the evidence presented, the trial court found Charles "did willfully violate the terms and conditions of his parole in failing to follow the directions of his parole officer as alleged." The court ordered Charles to serve 100 days in local custody, which was less than the 180 days recommended by parole, with credit for 76 days already served. Charles timely appealed.

## DISCUSSION

Charles asserts the trial court's finding that he willfully violated the terms and conditions of his parole was not supported by substantial evidence.[4] The Attorney General asserts the appeal is moot and should be dismissed because Charles has already served the full 100 days. We turn first to the Attorney General's pending motion to dismiss the appeal.

## I.

### *The Appeal Is Not Moot*

The Attorney General asserts the appeal should be dismissed as moot because Charles has already served the 100-day sanction for his parole violation and asks us to dismiss the present appeal. " ' "[W]hen, pending an

---

to dismiss the petition as a result. Charles does not dispute the trial court's ruling on that issue in the present appeal.

[4] Charles also asserted, in his opening brief, that the trial court abused its discretion by revoking his parole for the same reason, because there was no willful violation. In response, the Attorney General clarifies the trial court did not revoke Charles' parole and, instead, continued Charles on parole following the 100-day custody sanction. Charles appears to concede this point, but we note it makes little difference since the alleged abuse of discretion is based solely on the same finding, that Charles willfully violated his parole.

appeal from the judgment of a lower court, and without any fault of the [opposing party], an event occurs which renders it impossible for this court, if it should decide the case in favor of [defendant], to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal" ' as moot." (*People v. DeLeon* (2017) 3 Cal.5th 640, 645 (*DeLeon*).)

In *DeLeon*, the California Supreme Court determined an appeal from a parole violation proceeding was "technically moot" because DeLeon had completed the resulting jail term *and had been released from parole*. (*DeLeon, supra,* 3 Cal.5th at p. 645.) DeLeon argued the appeal was not moot because the parole violation could be considered as an aggravating circumstance in future criminal proceedings and, thus, he continued to face "disadvantageous collateral consequences." (*Ibid*.) The Court rejected the argument. (*Id*. at pp. 645–646.) Relying primarily on *Spencer v. Kemna* (1998) 523 U.S. 1, in which the United States Supreme Court addressed a similar contention, the Court in *DeLeon* concluded the fact that the parole violation could be used as an aggravating circumstance in future criminal proceedings did not "constitute a disadvantageous collateral consequence." (*DeLeon,* at p. 646.) It reasoned the potential would arise only if DeLeon committed a new crime and "[e]ven then, [the prior] parole violation [would be] just one of many factors a court may consider in deciding whether to grant probation, or what sentence to impose." (*Ibid*.)

Similarly, here, Charles asserts the present appeal is not moot and should not be dismissed because the parole violation is likely to have continuing collateral consequences. He acknowledges the Court's holding in *DeLeon* but argues it is distinguishable because he is still on parole and, further, has been charged with additional parole violations during the

5

pendency of this appeal. So he contends the trial court's judgment in this case could impact him in future proceedings in the same underlying criminal case. We agree. At a minimum, the time spent in local custody as a result of the violation at issue could extend Charles' overall period of parole. (See § 3000, subd. (b)(6) ["Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole unless the prisoner is found not guilty of the parole violation."].) We conclude the present appeal is not moot and deny the Attorney General's pending motion to dismiss.[5]

## II.

### *Substantial Evidence Supports the Trial Court's Finding of a Willful Parole Violation*

---

[5] Counsel for Charles informed the court on the eve of oral argument that Charles was "no longer on parole." It appears that he pled guilty on December 21, 2021 to a felony violation of section 290.012 in Shasta County, for failing to update his sex offender registration, and is currently serving a term of 2 years and 8 months in prison. At oral argument, the Attorney General maintained his position the appeal was moot, asserting that Charles' parole had terminated and that additional fact made this case even more like *DeLeon*, *supra*, 3 Cal.5th at page 645. However, neither the minute order nor the Shasta County abstract of judgment provided by the parties indicate whether the sentence in that case had any impact on the status of Charles' parole *in this case*. When the court inquired further, neither party could establish with any reliable information whether Charles' parole in this case has been terminated or is otherwise impacted by the new conviction and sentence. After further discussion, counsel for Charles retracted his prior statement that the parties agreed Charles "is no longer on parole," stating he had made a faulty assumption. In the absence of a complete record, or a stipulation by the parties, we are unable to consider what impact, if any, the new conviction and sentence may have on Charles' parole in this case, or whether it renders the present appeal moot.

On the merits, we review the trial court's finding that Charles willfully violated the conditions of his parole for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318; *People v. Kurey* (2001) 88 Cal.App.4th 840, 848 ["where the trial court was required to resolve conflicting evidence, review on appeal is based on the substantial evidence test"].) "The standard is deferential: 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination.' " (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681.) On this record, we have no difficulty concluding substantial evidence supports the trial court's finding.

Agent Holmes testified to his encounter with Charles at the parole office in San Diego County on May 3, 2021. Charles asked to stay in San Diego County because he had family in the area. Agent Holmes explained to Charles procedure required that he install the GPS device on Charles and that he would have to report to his supervising agent in Shasta County, and from there, "they could attempt to do a transfer investigation as they had in the past." Agent Holmes told Charles they would "entertain" his request, "[b]ut the procedure was the procedure, install the GPS device [and] report to his agent." Charles was disappointed "with the whole procedure" and told Agent Holmes: "[Y]ou might as well just lock me up again. *I'm not going to do that*, you might as well just put me back in custody again." (Italics added.)

Agent Holmes explained to Charles "that probably wasn't a good decision because [they] would be right back to the same situation in a few weeks, a few months later after he was released again" and he "tried to

7

encourage [Charles] to comply with the GPS monitor and get on the bus and head back up to [Shasta County]." But Charles told Agent Holmes "he did not want to return to Shasta County, *would not comply*, and please just lock me up." (Italics added.) He told Agent Holmes he would be "compliant [with the GPS requirement] *if* he could stay in San Diego." (Italics added.) Although Agent Holmes "empathize[d]" and "understood" Charles' disappointment, he testified "parolees aren't allowed to pick and choose what conditions they want to comply with. [Charles] has a list of conditions he has to comply with. And as a sex offender, as a parolee, he's required to wear that GPS monitor as instructed and follow the instructions of his agent, which was to install the GPS device, get on the bus and return to Shasta County."

Malcolm testified he took his brother to the parole office and heard Charles tell the parole agent he would be homeless if they sent "him back north" and "*he didn't agree to go*." (Italics added.) Malcolm "heard [Charles] specifically state that he would rather be locked up than to go back up to [Shasta County] because he would get a violation [for being homeless] and end up back in jail down there. . . . [H]e felt it would be better to lock him up." At some point, Malcolm convinced Charles that it did not make sense to go back to jail voluntarily. So Charles then told the parole agent "he was willing to comply with him *and stay*." (Italics added.) Charles "had a moment where he looked at the parole [agent]. And he said you know what, I talked to my brother and I think it will be best *if I end up staying down here* and following through with whatever you guys want me to do." (Italics added.) But the parole agent "said it was too late" and took Charles into custody. Malcolm testified the parole agents were "pretty respectful" toward him and Charles.

8

Charles testified in his own defense. He did not refute Agent Holmes' testimony that he refused to comply with the parole agent's orders. Indeed, he admitted that he refused to return to Shasta County. He was asked by his own attorney: "So is it fair to say that you did refuse to go to Shasta County?" He answered: "*Yes, I did*." (Italics added.) But he claimed he did not specifically say he would not participate in GPS monitoring, "because that's not in [his] vocabulary." He testified he did not want to return to Shasta County because he would be homeless, and that he had been assaulted there and was concerned it would happen again. He reported the assault to his parole officer but did not want to press charges. On cross examination, he conceded that he had lived in Shasta County for about two years before absconding to San Diego, and was able to obtain housing and employment for at least a portion of that time.

There is very little daylight between Agent Holmes' and Charles' testimony. Both clearly establish that Charles refused orders to comply with the conditions of his parole requiring him to put on a GPS device and report to the parole office in Shasta County for supervision. And both are substantial evidence supporting the trial court's finding that Charles willfully violated those conditions of his parole. (See *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["testimony of a single witness is sufficient to support a conviction"].)

Charles, however, relies on his brother Malcolm's testimony to assert he changed his mind and *eventually* agreed to comply. We are not persuaded. Malcolm's testimony makes clear that Charles' alleged agreement to comply with the terms of probation was premised on his ability to stay in San Diego, but Agent Holmes had already explained that was not possible. Further, we agree with the Attorney General: "Belated regrets or second thoughts after

9

violating parole do not erase the violation."  For the same reason, Charles' testimony at the hearing that he would comply if released is of no moment to whether he violated the terms of his parole when he refused to comply with Agent Holmes on May 3, 2021.

DISPOSITION

The judgment is affirmed.

DO, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.