Filed 10/6/23 In re R.A. CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re R.A., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>R.A.,<br><br>　　　Defendant and Appellant. | A165275, A166525<br><br>(Contra Costa County<br>Super. Ct. No. J18-01083) |

In this consolidated appeal, appellant R.A. challenges separate juvenile court orders following his commitment to a secure youth treatment facility (SYTF) pursuant to Welfare and Institutions Code section 875. Appellant contends the juvenile court abused its discretion when it denied his motion for a transfer into a less restrictive placement and for a reduction in his baseline term of confinement. He further contends the juvenile court erred in refusing to order programming to assist in his rehabilitation.

After briefing was complete on appeal, the trial court ordered appellant placed into a less restrictive program and released him on home supervision, but denied his request to reduce his baseline term. In supplemental briefs requested by this court, the parties agree the issue of appellant's placement is

moot. Appellant requests we nonetheless exercise our discretion to consider the issue.

We decline to exercise our discretion to decide the placement issue on the merits. As to the other challenges raised on appeal, appellant has not shown the trial court abused its discretion. Accordingly, we will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *First Sustained Petition: Assault and Resisting Arrest*

In November 2018, police detained appellant and another youth for burglarizing a car. Officers found appellant in possession of a window-breaking device and cocaine, and seized a cell phone and cash from his pocket. The boys were cited, transported home, and released to their parents. Shortly after appellant returned home, dispatch advised officers that appellant was acting out violently. When officers returned to his house, appellant was wielding a hammer and trying to access a locked door, behind which were his parents and nine-year-old sibling. During his outburst, appellant had broken several items around the home, damaged a doorknob, and hit large holes in the walls and bedroom door. Officers detained appellant and recovered a hammer and several items of red clothing from his room. They saw " 'MS-13' " written on the mirrors and walls.

Appellant pled no contest to a felony violation of Penal Code section 245, subdivision (a)(4) and a misdemeanor violation of Penal Code section 148, subdivision (a)(1). In January 2019, the court adjudged appellant a ward of the court and committed him to a nine-month program at Orin Allen Youth Rehabilitation Facility (OAYRF).

In August 2019, following his OAYRF commitment, Appellant sustained a probation violation for failing to check in with OAYRF staff during home visits, failing to obey curfew, and absconding from the program.

2

In February 2020, the probation department charged appellant with a violation of his probation conditions.  While proceedings on that petition were pending, appellant was arrested in May 2020, for various offenses, including possession of a firearm by a felon and unlawful possession of live ammunition.  After appellant admitted his probation violations, the court ordered him to complete all phases of the Youth Offender Treatment Program (YOPT) in June 2020.  He sustained another probation violation for fighting in October 2020, and was ordered to serve an additional 30 days in YOTP.

In April 2021, appellant was released to home supervision as part of YOTP's 120-day aftercare program. Several months later, the court ordered him released from home supervision.

## B.  Second Sustained Petition: BART Assault

In September 2021, approximately two months after he was released from home supervision, appellant and another person attacked a stranger on the platform of a Bay Area Rapid Transit (BART) station.  They hit the victim in the back of the head, kicked him in the head, and stabbed him in the thigh.  The incident was captured on video.  Appellant was arrested on a BART car just after the incident.

The juvenile court committed appellant to Briones Youth Academy (BYA) Secure Pathway for a baseline term of two years for the sustained Penal Code section 245, subdivision (a)(4) offense.  The court concluded a less restrictive alternative would be unsuitable based on the factors in Welfare and Institutions Code[1] section 875, subdivision (a)(3), including (1) the severity of the offense and appellant's "very significant" role; (2) his previous delinquent history and the adequacy and success of previous attempts at

[1] All further statutory references are to the Welfare and Institutions Code.

3

rehabilitation; (3) the programming, treatment, and education at BYA would meet appellant's needs; (4) the less restrictive alternative program would not meet the goals of rehabilitation and community safety; and (5) the BYA commitment was appropriate because appellant was on the older end of the spectrum for juvenile justice and his mental health needs would be satisfied by extensive mental health treatment available at BYA. The court found the BYA commitment would meet appellant's needs because, among other things, it offered an individually tailored rehabilitative plan, job training, evidence-based programming, and a secure environment where appellant could receive around-the-clock supervision, but also positive role modeling and conflict resolution skills that would help him develop a prosocial reentry into the community.

### C. April 2022 Hearing

At the six-month review hearing in April 2022, appellant requested the juvenile court modify his baseline term and reduce it by six months under section 875, subdivision (e)(1). Appellant's counsel emphasized that appellant's behavior had been "gold and silver," and argued he would have been eligible for a reduction in time credits had he been committed to the Department of Juvenile Justice (DJJ). She argued appellant had demonstrated "substantial compliance" toward his case plan, had been "gold" for 21 out of 24 weeks, and was deserving of a six-month reduction in the baseline commitment. Counsel argued the importance of positive reinforcement for good behavior and as an additional incentive, asked that appellant be allowed to attend carpentry classes at Laney College.

The prosecutor acknowledged appellant had done "tremendously well" and his performance in custody had been "remarkable," but argued a downward departure in the baseline was not warranted due to the

4

seriousness of his crime. The probation officer agreed appellant had "progressed significantly," but contended any reduction in the baseline terms should be considered at the next six-month review.

The court denied the request for a reduction in the baseline term, finding it to be premature and that appellant needed to make more progress with the available services at BYA. The court also declined appellant's request to attend carpentry classes in person, and maintained all prior orders, setting the next review hearing for six months out.

### D. October 2022 Hearing

Before the next review hearing, appellant's counsel filed a motion to modify disposition under section 875, subdivision (f). Appellant requested a " 'step down' " placement to a less restrictive program, arguing he had made "substantial compliance towards [the] goals" of his individual rehabilitation plan (IRP).

Appellant's probation officer filed a report with the court ahead of the review hearing. The report noted appellant had completed "five of nine interactive journaling books, Cognitive Behavioral Intervention Substance Abuse (CBISA), Victim Empathy, and two of three components of Aggression Replacement Training (ART)." It stated that for the remainder of the BYA program, appellant would continue to work on interactive journaling, "while completing Boys' Council, Advanced Practice, and the last component of ART." The report further noted appellant was meeting regularly with his therapist and had maintained "silver and gold" status. It further noted, however, that appellant had four incident reports for gang-related behavior, including gang writing on the inside of his cell door and gang-related exchanges with peers. The report noted that although appellant follows the majority of rules within the program, he is "deeply entrenched in gang

activity" which is "affecting his progress to make better choices." The probation department recommended that all prior orders remain in effect and that the court set another six-month review hearing.

Appellant's probation officer filed a memo ahead of the review hearing updating the juvenile court on appellant's most recent progress. The memo indicated appellant still needed to "complete the following classes: four interactive journaling books, Anger Control, Advanced Practice, and Financial Literacy," and recommended he continue his commitment to secure pathway to continue his treatment classes in an effort to aid in his rehabilitation.

At the review hearing in October 2022, appellant's counsel called the juvenile hall institution supervisor, Brian Horace, to testify. Horace testified about the structure of BYA, appellant's IRP and progress in secure track at BYA, the classes he had taken, and his current programming. Horace acknowledged no classes had been offered to appellant since July 2022.[2] He testified the "Free Your Mind"[3] curriculum might be available in the near future but it depended on staffing and training. Horace was very familiar with appellant and testified it was a "pleasure" to supervise him. Regarding the recent gang-related incidents, Horace expressed concern these had escalated since appellant's commitment to BYA and noticed "a different level of sophistication that didn't exist before." Horace described "the tagging and the gang stuff" as a "new issue."

---

[2] Horace also explained that when classes are not available to a youth on secure track, they continue to attend college and do group programming.

[3] "Free Your Mind" is an evidence-based training program available only for secure track use.

Based on Horace's testimony and evidentiary exhibits regarding appellant's programming and progress toward the goal of his IRP, appellant's counsel requested a step down to a less restrictive program. Counsel acknowledged the concern about the gang-related behavior, but noted appellant was not receiving "anything addressing that . . . specific need," which would be addressed in the step-down program counsel was proposing. Appellant's counsel also asked the court to reduce the baseline term, arguing appellant needed positive reinforcement.

The prosecutor opposed both requests, arguing the attack on the BART passenger was an "extremely vicious attack." The prosecutor also pointed to the gang-related incidents and argued appellant still had programming to complete before the probation department would consider him "fully rehabilitated."

A probation officer told the court that while appellant had made progress, probation's position was that he still needed to complete the programming in the secure track program. Specifically, appellant had four interactive journals to complete, as well as advanced practice and financial literacy programming.

The juvenile court denied appellant's step-down request, finding that appellant had made "substantial progress" but had "significant additional portions of his rehabilitation plan" that would be helpful to his rehabilitation. The court cited two factors in denying relief: (1) the evidence of appellant's current gang involvement and nature of his prior crimes, and (2) the lack of family support if he were released into the community, which the court acknowledged was not his fault. The court noted that despite "programming well" while in custody, appellant had a history of committing crimes and other probation violations on release. The court observed, "So the problem is

7

not his programming. He's very good at that. The problem is that, when he's back out in the community, he poses a severe danger to the public." For the same reasons, the court denied the request to reduce his baseline term under section 875, subdivision (e)(1).

Noting appellant had not received programming since July, counsel also asked the court how to address the lack of programming. The court suggested counsel "address it with Probation" and stated the court would also ask that probation provide programming. The court declined to order "Probation on what specific actions to take" but invited counsel to file a motion or "take the actions you deem appropriate."

Appellant timely appealed from both the April and October 2022 orders. We consolidated the appeals for all purposes.

## II. DISCUSSION

Appellant contends the juvenile court erred by (1) denying his motion to transfer him from an SYTF to a less restrictive placement, (2) denying his motion to reduce his baseline term, and (3) failing to order probation to provide additional programming to assist in his rehabilitation.

### A. *Mootness*

Both parties agree that the issue of whether the juvenile court abused its discretion in denying appellant's motion to be transferred into a less restrictive placement is moot in light of the trial court's September 11, 2023 order placing appellant under home supervision. Appellant nonetheless urges us to exercise our discretion to decide the issue on the merits to provide guidance to juvenile courts about the implementation of the new secure track statutory scheme because it is an important issue of public interest that is likely to evade appellate review.

8

" 'A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief.' " (*In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231.)  Generally, moot claims will not be addressed on the merits since "it is a court's duty to decide ' " 'actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' " (*In re David B.* (2017) 12 Cal.App.5th 633, 644 (*David B.*).)  Here, as the parties agree, appellant has been ordered out of SYTF and therefore reversal of the juvenile court's order would have no practical effect.  This aspect of the appeal is therefore moot.

Nonetheless, appellant urges us to exercise our discretion to decide the issue on the merits.  We may do so, for example, if "[t]he issue 'is likely to recur, might otherwise evade appellate review, and is of continuing public interest.' " (*People v. DeLeon* (2017) 3 Cal.5th 640, 646.)  Appellant contends we should address the merits of his claim because the creation of the secure track system is a key component of " 'sweeping juvenile justice realignment reforms' " enacted by Senate Bill No. 823 (2019–2020 Reg. Sess.) and, to date, no published decision has defined the meaning of how a youth makes a showing of " 'substantial progress' " toward the goals of an individual rehabilitation plan as required for a step-down motion under section 875, subdivision (f)(1).

We decline to exercise our discretion to decide this matter on the merits.  Appellant's argument that the juvenile court abused its discretion in failing to order a less restrictive placement turns on highly specific information regarding the particular facts of this case including his rehabilitative efforts and progress at BYA, his extensive record of prior

placements and performance on juvenile probation, and his continuing gang involvement. Because our decision in this case would depend on circumstances particular to appellant not on general questions of law whose resolution might provide helpful guidance in other cases, we decline to address it further. (See *David B.*, *supra*, 12 Cal.App.5th at p. 654 [refusing to resolve "fact-specific questions" raised about matter of public importance].)

## B. Baseline Term

Appellant next argues that the trial court abused its discretion in declining to reduce his baseline term.

Section 875, subdivision (e)(1) requires the juvenile court to hold a progress review hearing every six months at which the court will evaluate a juvenile ward's progress on the rehabilitation plan and determine whether to modify the baseline term of confinement. In making its determination, the court "shall consider the recommendations of counsel, the probation department and any behavioral, educational, or other specialists having information relevant to the ward's progress." (*Id.*, subd. (e)(1)(A).) At the conclusion of the review hearing, the court must decide whether the ward will remain in custody for the remainder of the baseline or term or whether the baseline term will be modified downward by a reduction of time not to exceed six months for each review hearing. (*Ibid.*)

Appellant emphasizes his good behavior during his commitment to the secure pathway at BYA and notes his counsel argued to the juvenile court at both review hearings that if he had been committed to DJJ, he would have been entitled to time credits based on good behavior. Counsel further emphasizes the "critical importance of 'positive reinforcement for youth,' a contention that science has long recognized." Noting the juvenile court "was not obligated to reduce the baseline for a full six months," appellant argues

10

that "[e]ven a reduction by a few days could have reinforced [his] positive behaviors and fostered his rehabilitation." Appellant asserts the juvenile court abused its discretion by denying his motion without any analysis and failed to give meaningful consideration to his request.

Appellant has not shown the trial court failed to give his request meaningful consideration or abused its discretion in declining to reduce the baseline term. At both the April and October 2022 review hearings, the juvenile court reviewed reports of appellant's progress and heard argument from counsel, and at the October hearing, it heard extensive testimony from the supervisor of BYA and admitted multiple exhibits offered by appellant regarding his progress toward rehabilitation.

At the April 2022 review hearing, the juvenile court found that although appellant was making progress on his rehabilitation plan, he had only been in the program for a few months and still had several other classes to complete. At the October 2022 hearing, the juvenile court stated it credited Horace's testimony and had reviewed the exhibits submitted. The court recognized that appellant made "substantial progress" in his rehabilitation, but also found "he has significant additional portions of his rehabilitation plan that still would be helpful to his rehabilitation process," including remaining programming and interactive journaling. The court further expressed concern that based on recent incidents, appellant continued to demonstrate he was "deeply committed to the gang lifestyle," and observed that appellant had not fully internalized the course lessons and changed his behavior.[4]

---

[4] The court articulated these concerns in the context of appellant's motion to be placed in a less restrictive facility, but indicated on the record that it was denying his motion to reduce his baseline term "for the reasons

11

These concerns are supported by a summary in the probation report reflecting that between June and August 2022, appellant obtained four separate incident reports for gang-related involvement. The probation report notes that although he had been admonished, he continued to engage in gang-related behavior. It observes appellant is "deeply entrenched in gang activity, and it is affecting his progress to make better choices," and that while he has "perfected 'programming,' . . . he has not understood the serious ramifications" of his gang-related behavior.

Contrary to appellant's argument that the court gave his request no serious consideration, the court fulfilled its obligation to evaluate appellant's progress in relation to his rehabilitation plan after considering arguments of counsel, recommendations of the probation department, and other evidence in the record. Our review reveals no abuse of discretion.

## C. *Programming Necessary to Rehabilitation*

Appellant also argues the trial court abused its discretion by failing to order the probation department to provide programming deemed necessary to his rehabilitation. He contends that through no fault of his own, his programming had "essentially stalled since July of 2022" and he asked the court to order that programming be made available prior to the next six-month review hearing.

We disagree that appellant has demonstrated an abuse of discretion on this record. Appellant bases his argument on an exchange between the court and counsel near the end of the October 2022 hearing. Appellant's counsel stated that appellant had not had programming since July, and that the less

---

[the court had] stated" in relation to appellant's other motion. Appellant's contention that the trial court failed to analyze his claim or give it serious consideration is thus contradicted by the record of the proceedings.

restrictive housing unit in which he was supposed to reside was not yet open, then asked the court, "[H]ow shall I address that if there's no programming that he's receiving?" The court responded: "I think you address it with Probation. I'll ask that programming be provided. [¶] And if you think there's a legal basis for seeking a motion, you can do so. [¶] Beyond that, I don't know of any statutory mechanism for enforcing the programming requirement." Appellant's counsel then asked if the court would be open to ordering that appellant be given interactive journaling books and scheduling a further hearing with respect to programming in 45 days in case counsel had any concerns. The court responded, "I'm not going to be ordering Probation on what specific actions to take. I'm not setting another interim review. [¶] I've addressed the issues that are on calendar for today, so I need to set a date, and we're done for now, and you take the actions you deem appropriate."

The record reflects the juvenile court responded appropriately to counsel's request. The court directed appellant's counsel to first address the matter with the probation department, who presumably could work with BYA to ensure that necessary programming was provided. The court also told counsel that the court would ask probation to provide programming. The court then encouraged counsel to bring a motion if counsel continued to have concerns or had a specific legal basis for the request.

Appellant contends the trial court's refusal to order "additional programming, including formal, evidence-based gang-intervention treatment, was based on the mistaken belief that it had no authority to do so." Appellant does not point us, however, to a request for "evidence-based gang-intervention treatment." Rather, appellant's counsel asked what counsel should do and asked that appellant be given access to interactive journals.

13

The record reflects the juvenile court appropriately encouraged appellant's counsel to address the programming issues first with probation and offered counsel the opportunity to raise the issue again by way of a formal motion.[5] There was no abuse of discretion.

### III. DISPOSITION

The orders of the juvenile court are affirmed.

---

[5] As the Attorney General points out, evidence in the record shows that certain classes were unavailable due to short-term logistical issues related to a programming pause during a COVID-19 outbreak, and because of the necessity of providing refresher courses to trainers who would be conducting the classes. Appellant continued to attend counseling and school during the gap in other programming.

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A165275, A166525
*In re R.A.*