Filed 2/28/24  P. v. Carson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM LEROY CARSON,<br><br>    Defendant and Appellant. | E080236<br><br>(Super.Ct.No. BPR2201157)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Gary Polk, Judge.  Affirmed.

Eric Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant and appellant William Carson appeals from the trial court's finding that he violated his parole conditions by failing to report to his parole agent within one working day of his release from custody. We affirm.

## PROCEDURAL BACKGROUND

Defendant's criminal history includes eight felony convictions and eight misdemeanor convictions, dating back to 1987. In January 1994, he was convicted of committing a lewd and lascivious act against a child under 14 (Pen. Code,[1] § 288, subd. (a)), and, as a result, he was required to register as a sex offender.

In July 2020, defendant was convicted of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)(1)) and failure to register as a sex offender (§ 290.018, subd. (b)(1)). He was sentenced to 32 months in prison and subsequently released on parole under specified conditions, including that he participate in continuous GPS (Global Positioning System) monitoring and that he report to his parole agent "on the first working day" following his release from custody. On August 18, 2022, defendant was returned to county jail for 180 days for absconding and disabling his GPS device.

On October 18, 2022, the Division of Adult Parole Operations (DAPO) filed a parole revocation petition (the petition), alleging that defendant violated the condition that he report to his parole agent " 'on the first working day following [his] release,' "

---

[1] All further statutory references will be to the Penal Code, unless otherwise indicated.

2

and that he failed to report to his parole agent " 'within one working day following release from custody' " to have a GPS device affixed to him, pursuant to section 3010.10, subdivision (a) (for persons required to register as sex offenders). The petition specifically alleged that defendant was released from county jail on October 6, and failed to report to the parole office on the first working day after his release (October 7) to have a GPS device placed on his person. The petition alleged that defendant, instead, reported to the parole office at approximately 6:00 p.m. on October 10, and he was arrested on October 11, for the violations. While being transported to the detention center, he was asked why he failed to report on time. Defendant said he was released on October 6, and went around looking for his property that his friends were holding for him, and by the time he realized he needed to report to the parole office, it was closed. The petition also stated that he had a history of removing and/or disabling his GPS device, he had had multiple parole violations since his initial release date, and nine of those violations resulted in his parole being revoked.

The court held a parole revocation hearing on November 18, 2022. The People called defendant's parole agent (the agent) as a witness. The agent testified that he was assigned to defendant's case in September 2022, about one month prior to his release from custody. The agent testified that, under defendant's parole conditions, he was required to report to his parole agent on the first working day following his release from custody, and he was required to participate in continuous GPS monitoring due to his 1994 conviction of lewd and lascivious conduct with a 14-year-old. On Tuesday, October 11, the agent was routinely checking the county jail website called JIMS (Jail Inmate

3

Management System) for all the parolees on his caseload, and defendant's name came up. The agent thereby learned that defendant was released from custody on October 6. Defendant was thus required to report to him on October 7, which was a Friday. The agent testified that he did not receive any type of communication from defendant from October 6 to October 10. He further testified that the parole office was regularly open Monday through Friday from 8:00 a.m. to 5:00 p.m., and that defendant reported to the parole office after hours on October 10.

The agent also testified that, on October 11, 2022, he noticed defendant's GPS location was not far from the parole office, so he drove over to interview him. The agent asked defendant why he had not reported to the parole office as required, and defendant said he was released from custody on October 6, and went to gather his belongings from his friends, and by the time he realized what time it was on October 7, the office had closed. Defendant also said he used methamphetamine over the weekend. The agent asked defendant why he did not report to the parole office on Monday, October 10, and defendant had nothing to say; he just referred back to using methamphetamine that weekend.

The prosecutor asked the agent if he had considered sanctions in this case. The agent said he did not think sanctions were appropriate since defendant had been on parole for a long time, had a total of approximately 24 prior parole violations, and had been continued on parole and "referred to a program" maybe 15 or 16 times. The agent said defendant had been returned to custody nine times throughout this parole period, so

4

"[t]his [was] nothing new for him." The agent recommended that defendant be returned to custody for 180 days.

On cross-examination, defense counsel showed the agent an alleged printout from the JIMS website, which reflected that defendant was released from custody on October 7, 2022. The agent acknowledged the printout indicated defendant was released on October 7, and that he (the agent) could have been mistaken about defendant's release date being October 6. He confirmed that if defendant was released on October 7, he would have been required to report to the parole office by the end of the business day on Monday, October 10. At defense counsel's request, the court then took judicial notice that October 10 was Columbus Day. Defense counsel reminded the agent that he testified defendant had a GPS device placed on him on October 10. The agent confirmed that defendant did not report until 6:00 p.m., which was after hours; thus, he reported an hour after the office was closed.

On redirect examination, the agent testified that, when he looked at the JIMS website to confirm when defendant was released, it said something different than the printout defense counsel presented in court. The agent also repeated that when he spoke to defendant, defendant said he was released on October 6, 2022. The agent further testified that defendant had a history of "disabling, absconding, removing the GPS device," and that his previous violation was similar in that his GPS battery went dead, and he waited until after hours to go to the parole office and put the monitor on a charger. The agent testified that defendant knew when the office closed, and he was developing a

5

pattern of waiting until the office was closed, perhaps in the hope that his agent was not at the office and "somebody else deals with it."

On cross-examination, the agent testified that parolees still have to report on federal holidays if it's a regular working day. The court then addressed the agent and asked whether the parole office was a state or county office, and the agent confirmed it was a state office. The court asked if the state recognized Columbus Day as a holiday, and the agent said it was a regular working day. The court then took judicial notice that defendant was in court for a revocation hearing on a different case at 1:30 p.m., on October 6, 2022 and, in that case, defendant was found to be in violation of his parole supervision, although it was nonwillful; consequently, he was sentenced to 100 days in custody, his release date was October 6, and he was ordered to report to the parole office one business day from his release. Defense counsel interjected, "That's exactly what happened. He was actually given credit for time served and released that day." The court then asked the agent if he knew what time defendant was released, and the agent responded he only knew that when he looked on the JIMS website, it listed defendant as being released on October 6, which was consistent with the court's order that he be released on October 6. The court confirmed that if defendant was released on October 6, he would have been required to report to the parole office on October 7; but, if he was released on October 7, he would have been required to report on October 10. The court then reiterated that defendant told the agent he was released on October 6. The court asked more questions, and the agent testified that defendant knew where the parole office was located, since he had previously checked in there.

6

Defendant testified on his own behalf and said he did have a parole revocation hearing on October 6, 2022, and that the court gave him credit for time served for 100 days. However, defendant said he was not released that day. He said he was at the Banning courthouse until 5:00 p.m. and was transported to the Banning jail at 7:00 p.m. He was then transported to the Riverside County jail at approximately 7:30 p.m., where he stayed until he was called to be released, at 1:15 a.m. Defendant said he was not released until later that morning; thus, his release was October 7. His understanding was he had to report to the parole office within 24 business hours of his release, not including the weekend. Defendant said he was confused as to whether Columbus Day was a holiday, since he always had that day off from school when he was growing up. However, on the afternoon of October 10, he was "made aware" that it was not a holiday, so he got on a bus and went as quickly as he could to the parole office, but he was late. Defendant testified that he arrived at the parole office at 5:15 p.m. or 5:20 p.m., the front door was locked, and he banged on it, but nobody answered. Defendant said he sat on the bench outside and "hoped," since there were still a couple parole officer cars outside. Sometime later, someone pulled up to the office and the back door opened. Defendant saw an officer and asked if his parole officer was still there, and the officer said no. Defendant told that officer he was supposed to report and needed to get a monitor put on him. So, that officer put a GPS monitor on him. Defendant said that officer told him to call and make sure he was at the parole office the next day at noon. Defendant just stayed at the parole office until the morning, since he was homeless. He had gone to get some breakfast when the agent contacted him. Defendant testified that he told the agent

7

he was released from custody on October 7, and was trying to gather his belongings in Menifee. The agent then instructed him to report to the parole office, so defendant went there and was placed in custody.

The court heard closing arguments. The prosecutor stated there was a discrepancy over whether defendant was released on October 6 or October 7, 2022, but asserted that the court took judicial notice that defendant was ordered to be released on October 6. The prosecutor stated the agent testified that he saw October 6 listed on the JIMS website, and also that defendant told the agent he was released on October 6. The only evidence that defendant was released on October 7 was his own testimony and defense counsel's printout, which was never placed into evidence or properly authenticated. The prosecutor argued that, even if defendant was released on October 7, he was required to report on October 10, and the only evidence on why he did not do so was his own testimony that he thought, from his childhood, that Columbus Day was a holiday. The prosecutor pointed out that defendant was never told he did not have to report on October 10. Further, while defendant might have reported an hour late or 20 minutes or 15 minutes that day, it was still a violation, which warranted a 180-day jail term.

Defense counsel argued that defendant was not released on October 6, but early in the morning on October 7; as such, he did not have to report until Monday, October 10, 2022. Defense counsel acknowledged defendant said it was his childhood belief that Columbus Day was a holiday; but as soon as he heard he had to report that day, he hopped on a bus to try and make it to the parole office. Defense counsel admitted defendant was late. He stated defendant "acknowledges that he was 15 minutes late and

8

it is a violation." Defense counsel then argued he did not believe that "180 days in custody fits the crime for being 15 minutes late." Counsel contended the Penal Code did not mandate a sanction of 180 days; rather, the court had discretionary authority to take intermediate sanctions. Defense counsel reiterated he did not believe defendant deserved 180 days in custody, even if he was 15 minutes late and failed to report in a timely manner or comply with the GPS monitoring requirement. He concluded that defendant allowed the GPS to be placed on him on October 10, which was the deadline, and noted the parole officer who affixed the GPS elected not to arrest him at that time. Thus, defense counsel requested the court give defendant credit for time served and place him in a drug program.

The court asked defense counsel for a copy of the JIMS printout, which had not been submitted earlier to the court. The prosecutor said he reviewed the printout when defense counsel gave him a copy while he was questioning the witness. The prosecutor felt that the printout was incorrect, just because it was not properly authenticated. He further noted that the agent said in his report he had a JIMS printout that reflected a different date, "[s]o no one can probably authenticate this specific date and JIMS printout." The prosecutor said the agent handed him a copy of that JIMS printout, but it was never disclosed to the defense, which is why the prosecutor decided not to introduce it. The prosecutor further argued that, since defendant had violated his probation several times, intermediate sanctions were not appropriate.

The court found defendant in violation of his probation. It noted that, on October 6, 2022, he had a parole violation hearing and was given credit for time served,

9

"and instead of that getting his attention, he [did not] register." The court acknowledged defense counsel's argument that defendant checked in, albeit late, and the person did not take him into custody at that time; however, the court remarked that that person was not defendant's parole officer and was not familiar with his file. The court then sentenced defendant to 150 days. It stated that defendant had 42 actual days in custody and would get 84 credits for time served, so he would have a release date of December 25. The court ordered him to report to parole one day from his release, and defendant agreed.

DISCUSSION

Substantial Evidence Supports the Court's Finding That Defendant Violated His Parole

Defendant contends he was denied due process because the evidence did not support a finding that he violated his parole. He claims there was no substantial evidence of the actual date he was released from custody. He then argues that he complied with his parole terms by reporting to the parole office on October 10, 2022, as nothing in his parole conditions or section 3010 "provides any more specific delineation of the phrase 'one working day' " or says 5:00 p.m. is "a drop-dead cutoff" time for reporting. We conclude there was substantial evidence to support the court's finding that defendant violated his parole.

Before we address the merits of defendant's claim, we address the People's request that we dismiss the appeal as moot. "An appeal may be dismissed as moot when, pending the appeal and through no fault of the appellant, an event occurs that renders it impossible for the reviewing court to grant the appellant any effective relief for the claims raised on appeal. [Citation.] But a reviewing court has discretion to consider a

10

moot claim if it is of continuing public interest, is likely to recur, and might otherwise evade appellate review." (*People v. Schaffer* (2020) 53 Cal.App.5th 500, 506 (*Schaffer*).) Citing *People v. DeLeon* (2017) 3 Cal.5th 640 (*DeLeon*), the People contend defendant's challenge to the parole revocation is moot, and we are unable to grant any effective relief because he has already completed the 150-day county jail term for his October 2022 parole violation.

Defendant had 84 days of custody credits on November 18, 2022, the day he was ordered to serve the 150-day term. As a parolee confined to county jail (§ 4019, subd. (a)(5)), he was eligible to earn two days of custody credits for every four days he served in jail after November 18, 2022. (§ 4019, subds. (b), (c).) We note the court informed him his release date would be December 25. As the People concede, the record does not show he was released from custody. However, since well over 150 days have passed since the November 18 hearing, it is reasonable to assume he has served the 150-day jail term for his parole violation. Thus, it appears we are unable to grant any effective relief that would ameliorate that punishment. (See *Schaffer*, *supra*, 53 Cal.App.5th at p. 506.)

However, defendant asserts that, in *DeLeon*, the record showed the defendant in that case not only served his parole revocation term, but also that his parole had been terminated. (See *DeLeon*, *supra*, 3 Cal.5th at p. 645.) Defendant argues the People here have not shown that his parole has been terminated, and he points out that the Riverside County Sheriff's website "shows that as of September 14, 2023, [he] is in custody at the Robert Presley Detention Center." Because of defendant's extensive criminal history reflected in the record, it is unclear if his parole period in the instant case has been

11

terminated and/or why he is currently in custody. Even if his parole period has not been terminated and his appeal is not moot, defendant's claim that the evidence did not support a finding that he violated his parole has no merit.

A. *Relevant Law*

Upon a finding that a person has violated the conditions of his parole, a court has the authority to "[r]evoke parole and order the person to confinement in a county jail." (§ 3000.08, subd. (f)(2).) Confinement shall not exceed a period of 180 days. (§ 3000.08, subd. (g).) "Parole revocation determinations shall be based upon a preponderance of evidence admitted at hearings including documentary evidence, direct testimony, or hearsay evidence offered by parole agents, peace officers, or a victim." (§ 3044, subd. (a)(5).) We review an order revoking parole for abuse of discretion and review the court's factual findings for substantial evidence.[2] (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318 (*Butcher*); *People v. Urke* (2011) 197 Cal.App.4th 766, 772.) "Under that standard, our review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision. In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the

---

[2] "In 2012 the Legislature amended section 1203.2 to incorporate parole into the statutes governing revocation of probation, mandatory supervision, and postrelease community supervision." (*DeLeon*, *supra*, 3 Cal.5th at p. 647.) "Together, sections 1203.2 and 3000.08 establish a statutory framework for parole revocation." (*Ibid.*; see *People v. Rodriguez* (1990) 51 Cal.3d 437, 441 ["Parole and probation revocation hearings are equivalent in terms of the requirements of due process."].)

12

judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849 (*Kurey*).)

B. *Substantial Evidence Supports the Court's Finding That Defendant Violated His Parole*

At the outset, we note that, during closing arguments, defense counsel stated defendant "acknowledges that he was 15 minutes late, and it is a violation." Thus, defendant apparently admitted he was in violation of his parole, and defense counsel argued that defendant still had the GPS affixed to him on the day he was required to. However, defendant now claims there was an "absence of evidence that a parole violation occurred." Assuming arguendo defendant has not waived his argument, we conclude there was substantial evidence to support the court's finding of a violation.

The prosecution only had to prove that defendant violated his probation by a preponderance of the evidence. (See § 3044, subd. (a)(5).) The agent testified that when he reviewed the JIMS website on October 11, 2022, it reflected that defendant was released from custody on October 6.[3] Defendant claims the JIMS report on the website was hearsay and therefore could not be considered substantial evidence. However, hearsay evidence offered by parole agents is admissible at parole revocation hearings.

---

[3] In his reply brief, defendant argues that the agent did not provide documentation for this assertion and that the prosecutor did not comply with the Evidence Code requirements for the admission of business records and records by public employees. However, defendant failed to make this argument in his opening brief. "Withholding a point until the reply brief deprives the respondent of an opportunity to answer it, however. Hence, a point raised for the first time therein is deemed waived and will not be considered, unless good reason is shown for failure to present it before." (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.) No good cause is shown here.

13

(*Ibid.*)  In any event, the agent also testified that, when he made the field contact with defendant, defendant said he was released from jail on October 6.  Furthermore, the court took judicial notice that defendant was in court for a revocation hearing on a different case on October 6, was found to be in violation of his parole supervision, and was released from custody the same day.  At that point, defense counsel even agreed that defendant was released on October 6.  Accordingly, defendant was required to report to the parole office on the next working day.  It is undisputed that he did not report on Friday, October 7.  Thus, there was substantial evidence that defendant was in violation of the parole condition requiring him to report to his parole agent " 'on the first working day following [his] release' " from custody.

Defendant points out that the parties disputed whether he was released from custody on October 6 or October 7, 2022, and he asserts that neither party presented any substantial evidence as to the actual date of his release.  However, he then goes on to argue that he was released "sometime during the morning hours of October 7," and he complied with his obligation since he reported to the parole office and had a GPS device placed on him on October 10.  Assuming defendant was released from custody on the morning of October 7, he was still in violation of his parole condition.  With an October 7, release date, he would have been required to report on "the first working day" thereafter, which was Monday, October 10.  Section 3010.10, subdivision (a), also required him to report to his parole agent "within one working day following release from custody" to have a GPS device affixed to him.  (§ 3010.10, subd. (a).)  The agent testified that the parole office's hours of operation were 8:00 a.m. to 5:00 p.m.  Defendant did not

report to the parole office until after business hours on October 10. The agent testified he reported at 6:00 p.m. Defendant testified he arrived there at 5:15 p.m. or 5:20 p.m., and the front door was locked. Whichever time it was, the working day was over. Defense counsel acknowledged at the revocation hearing that defendant "was 15 minutes late, and it [was] a violation."

Defendant next argues that nothing in his parole conditions or section 3010.10 "provide for a witching hour of 5:00 p.m. as a drop-dead cutoff" for reporting to the parole office. He contends that "[c]ommon sense tells us that if a parolee reported at 5:15 and there was a Parole Officer available to handle the installation of the GPS device, the parolee would be in compliance." As the court noted, the person who gave defendant a GPS device after hours on October 10, 2022 was not his parole officer and not familiar with his file. Furthermore, assuming defendant was released on the morning of October 7, he had a full working day to report to his parole agent that day, and, after having an entire weekend out of custody, another full working day to report on October 10. Nonetheless, as the trial court commented, defendant did not ensure compliance with the reporting condition, even though he had just been granted credit for time served on another revocation. We also note the agent's testimony that the circumstances of defendant's previous parole violation were similar to this violation, where his GPS battery died and he waited until after hours to go to the office. The agent observed that defendant seemed to be developing a pattern where he would wait until the office was closed before he reported. The agent testified that defendant knew when the office closed, which was 5:00 p.m.

15

As with so many other government deadlines, including court appearances, appearing after business hours is not compliance with an action which must be completed by a specified date. For example, no one could reasonably suggest that appearing for court, after the court has closed for the day, constitutes an appearance that day. Thus, the more reasonable interpretation of compliance within a working day means prior to the close of that business day.

Viewing the evidence in a light favorable to the judgment, as we must, we conclude there was substantial evidence to support the court's finding that defendant violated his parole. (See *Butcher*, *supra*, 247 Cal.App.4th at p. 318; *Kurey*, *supra*, 88 Cal.App.4th at pp. 848-849.) Thus, the court properly revoked his parole and sentenced him to 150 days in jail.[4]

---

[4] As respondent points out, the court could have imposed a maximum of 180 days in jail, but chose to give defendant 150 days. (§ 3000.08, subds. (f)(2), (g).)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS            
J.

We concur:


MILLER          
Acting P. J.


CODRINGTON        
J.

17