Filed 5/24/24  In re J.I. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| In re J.I., a Person Coming Under the Juvenile Court Law. | C099335 |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  J.I.,  Defendant and Appellant. | (Super. Ct. No. JV137919) |

When 17 years old, J.I. shot someone in the stomach at a party.  He afterward admitted to attempting to murder someone—with enhancements for firearm use and great bodily injury—and was committed to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ).  Several years later, with the closure of DJJ imminent, the juvenile court recalled his DJJ commitment and committed him to a secure youth treatment facility.

1

In this appeal, J.I. challenges his commitment to a secure youth treatment facility and the juvenile court's application of his custody credits. We affirm. We find J.I.'s challenge to the commitment moot because, after he filed his opening brief, the juvenile court released him from the secure youth treatment facility. We also conclude J.I. has not shown that the juvenile court erred in applying his custody credits.

BACKGROUND

In 2018, a wardship petition was filed against J.I. under Welfare and Institutions Code section 602,[1] alleging that he committed an attempted murder (Pen. Code, §§ 664, 187, subd. (a)) and an assault with a deadly weapon (*id.*, § 245, subd. (a)(2)). It was further alleged for the attempted murder, that J.I. personally used and discharged a firearm causing great bodily injury (*id.*, § 12022.53, subd. (d)); for the assault, that J.I. personally used a firearm (*id.*, § 12022.5, subd. (a)); and for both offenses, that J.I. inflicted great bodily injury (*id.*, § 12022.7).

Over two years later, J.I. admitted he attempted to murder someone, inflicted great bodily injury, and personally used and discharged a firearm. The juvenile court sustained the petition in part following J.I.'s admission, with the prosecutor dismissing the assault count in consideration of the admission. The juvenile court committed J.I. to DJJ for a maximum term of confinement of 30 years.

A few months after the court committed J.I. to DJJ, the Legislature enacted a bill calling for the closure of DJJ on June 30, 2023. (Stats. 2021, ch. 18, § 10.) On June 29, 2023, with the closure of DJJ imminent, the juvenile court recalled J.I.'s commitment to DJJ. J.I. and the prosecution afterward filed competing motions about an appropriate placement in place of DJJ, with J.I. favoring release with supervised probation and the prosecution favoring placement in a secure youth treatment facility.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Both J.I. and the prosecution focused their arguments on section 875—the statute describing the process for committing a ward to a secure youth treatment facility. Section 875 allows a court to commit a ward who is at least 14 years of age to a secure youth treatment facility if three conditions are met. First, the "juvenile is adjudicated and found to be a ward of the court based on an offense listed in subdivision (b) of Section 707 that was committed when the juvenile was 14 years of age or older." (§ 875, subd. (a)(1).) Second, this "adjudication . . . is the most recent offense for which the juvenile has been adjudicated." (*Id.*, subd. (a)(2).) And third, the "court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable" based on certain specified criteria and after considering all relevant and material evidence. (*Id.*, subd. (a)(3).)

Following a hearing, in an August 14, 2023 order, the juvenile court concluded that J.I. should be committed to a secure youth treatment facility. It calculated his baseline term of confinement to end on July 1, 2024, after reducing five months for good behavior and programming, and it calculated his maximum term of confinement to be 27 years. The court also determined that he had 1,709 custody credits, and applied these credits against his maximum term of confinement.

J.I. timely appealed. After he filed his opening brief, the juvenile court further reduced his baseline term, found he had completed this term, and released him from the secure youth treatment facility and placed him on supervised probation. (See § 875, subd. (e)(1)(A) [court may reduce a ward's baseline term], (3) [court may discharge the ward to probation after completion of the baseline term].) J.I. has requested judicial notice of the court's minute order covering these changes. We grant his request. (Evid. Code, §§ 452, subds. (c) & (d), 459.)

3

DISCUSSION

I

*Secure Youth Treatment Facility*

On appeal, J.I. contends the juvenile court's decision to commit him to a secure youth treatment facility was flawed for three reasons: first, because the court wrongly found that his most recent adjudicated offense was an offense listed in section 707, subdivision (b)—a required condition for commitment under section 875; second, because substantial evidence does not support the court's finding that less restrictive alternatives were unsuitable—another required condition for commitment under section 875; and third, because the court failed to consider, and the record does not show, that he would probably benefit from the services available at the secure youth treatment facility.

We begin (and end) by considering whether this issue is moot. "A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief." ' " (*In re D.P.* (2023) 14 Cal.5th 266, 276.) In this case, after J.I. filed his opening brief, the juvenile court released him from the secure youth treatment facility and placed him on supervised probation. J.I. is thus no longer committed to a secure youth treatment facility, rendering his challenge to his commitment arguably moot. (Cf. *People v. DeLeon* (2017) 3 Cal.5th 640, 645-646 & fn. 2 [concluding that a challenge to a trial court's finding of a parole violation was moot, reasoning that the parolee had already served his jail term and that any collateral consequences were "simply too speculative to support the conclusion that a legally sufficient controversy exists"].)

J.I. generally agrees, accepting that his challenge to his commitment "arguably now may be moot." But he offers one reason for finding this issue not moot, stating in a one-sentence argument that if we set aside the commitment order, he would benefit in not having his commitment to a secure youth treatment facility show on his juvenile record. But he never explains why that would meaningfully benefit him, nor does he cite any

4

authority supporting his claim. Nor, in any event, can we say that the mere appearance on his record of a commitment to a secure youth treatment facility, as opposed to a less restrictive alternative, is a collateral consequence that cuts against a finding of mootness. (But see *People v. Ryan* (1992) 9 Cal.App.4th 1855, 1859 [a commitment to prison, as opposed to a prison alternative, can have collateral consequences because of enhanced sentencing for prison priors].)

We also note several additional considerations favoring a finding of mootness. First, because J.I. has already been released from the secure youth treatment facility, his succeeding on his claim here would potentially be to his detriment. Again, he argues in large part that his commitment was flawed because the juvenile court failed to consider, and the record does not show, that he would probably benefit from the services available at the secure youth treatment facility. But if we agreed with J.I. on this point, case law would favor remanding this matter to the juvenile court for a new disposition hearing, which possibly could result in the court again committing him to a secure youth treatment facility. (See *In re Miguel C.* (2021) 69 Cal.App.5th 899, 911-912.) That, however, is "no remedy at all to one who has already been released." (*In re Miranda* (2011) 191 Cal.App.4th 757, 762.) Second, J.I. is no longer a minor; he is nearly 23 years old. So to the extent he commits additional offenses in the future, he would expect to face criminal charges, not new juvenile proceedings. Under these circumstances, we will treat this issue as moot.

## II

### *Custody Credits*

Apart from challenging his commitment, J.I. also contends the juvenile court wrongly applied his custody credits against his maximum term of confinement. We acknowledge that, in some cases, a ward's release from confinement will not always moot a claim concerning custody credits. (*In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231 [finding a custody credit issue not moot after release from commitment].)

5

Assuming that J.I.'s claim here is not moot, we find he has not shown he is entitled to any relief.

Before getting into the details of J.I.'s argument, we start with some context. Section 875 requires juvenile courts to set a "maximum term of confinement" for wards committed to a secure youth treatment facility (§ 875, subd. (c)(1)), and it requires a ward's precommitment custody credits to be applied against this term (*id.*, subd. (c)(1)(C)). Section 875 also limits a ward's potential confinement time based on the ward's age, providing that even for the most serious offenses, a ward cannot be held in secure confinement beyond 25 years of age, or two years from the date of commitment, whichever occurs later. (*Id.*, subd. (c)(1)(A).) So even if a ward has a maximum term of confinement of over 20 years, as in this case, the ward still typically cannot be held beyond 25 years of age.

In this case, J.I. contends the court should have applied his custody credits against the date when he would turn 25—the latest he could be held in secure confinement—rather than, as section 875's text requires, apply these credits against his maximum term of confinement. He offers two arguments in support. First, in his opening brief, he indicates that his preferred approach is required under *In re Ernesto L.* (2022) 81 Cal.App.5th 31. But he neither discusses the case nor offers any pin cite for it. In offering only this conclusory and unexplained argument, we find J.I. has failed to show that the juvenile court erred. (*People v. Gonzalez* (2021) 12 Cal.5th 367, 409 [in making only a conclusory argument without explanation, the defendant failed to show the trial court erred]; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error"].)

Next, in a supplemental brief, J.I. raises an equal protection claim. He asserts that minors committed to a secure youth treatment facility are treated worse, in terms of custody credits, than minors formerly committed to DJJ. But he never explains the

process for calculating and applying custody credits for those committed to DJJ, other than to suggest that this process can be found in *In re Ernesto L., supra*, 81 Cal.App.5th 31—a case that he, again, declines to discuss.  Nor does he acknowledge that he is attempting to compare an existing class of people—those committed to a secure youth treatment facility—to a no longer existing class of people—those committed to DJJ.  (See § 736.5, subd. (e) ["The Division of Juvenile Justice . . . shall close on June 30, 2023"].)  In again offering only a conclusory and unexplained argument, we find J.I. has failed to demonstrate that the juvenile court erred in its award of custody credits.  (*People v. Gonzalez, supra*, 12 Cal.5th at p. 409.)

DISPOSITION

The juvenile court's August 14, 2023 order is affirmed.


/s/
BOULWARE EURIE, J.

We concur:


/s/
RENNER, Acting P. J.


/s/
MESIWALA, J.

7