Filed 11/19/24  P. v. V.A. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>V.A.,<br><br>        Defendant and Appellant. | A169970<br><br>(Contra Costa County<br>Super. Ct. No. 012400287) |

Appellant V.A. appeals after the trial court remanded him to the California Department of Corrections and Rehabilitation (CDCR) following a hearing at which the court found probable cause that a parole violation occurred, but without ever holding a final parole violation hearing.  Appellant now moves for summary reversal.  We asked for supplemental briefing and held oral argument.  The parties now agree that appellant should not have been remanded to prison after the determination of probable cause but before the final parole violation hearing.  We also agree, and we grant the motion for summary reversal.

Accordingly, the trial court's order of February 7, 2024, remanding appellant to the CDCR is reversed, and the matter is remanded to the trial court for further proceedings on the petition for parole revocation.

1

# BACKGROUND

In May 2013, appellant pleaded guilty to one count of lewd or lascivious conduct upon a child under the age of 14 years by use of force (Pen. Code, § 288, subd. (b)(1)) and two counts of inducing a minor to use a controlled substance (Health & Saf. Code, § 11353), and he was sentenced to 17 years in prison.

On December 23, 2023, appellant was released on parole.

On January 30, 2024, the Division of Adult Parole Operations filed a petition for revocation (citing Pen. Code, §§ 3000.08, 1203.2) alleging appellant had not registered as a sex offender.

A probable cause hearing on the petition was held on February 7, 2024. At the outset, the deputy district attorney stated, "I think we're not in the complete end of our investigation," and "I think there is a technical violation, but there's other extenuating circumstances." The trial court responded that it had "no options," and, "The only thing the Court can do is hold a probable cause hearing. If there is a [*sic*] probable cause, then he is remanded to the Department of Corrections for a[n] actual parole hearing."

The trial court was unequivocal that the hearing it was about to conduct was "not a parole violation hearing" and stated, "It's not where the DA has to prove by a preponderance of the evidence that parole was violated. *It's just whether there's some basis to hold him in custody for the actual hearing.*" (Italics added.)

The prosecution called a parole agent to testify, and appellant testified on his own behalf.[1]

---

[1] Parole agent Donald Haines, who was not appellant's parole officer, testified that he picked up appellant from state prison on December 23, 2023, and told him he was to register at his local police department within five business days following release. Haines checked the California Sex and

2

The trial court found "a factual basis to hold [V.A.] for his parole violation hearing."  The court stated, "There is certainly more than enough evidence that he should be held—let me try and get the language.  I have some language, I save it.  [¶] So as to Violation 1, Failure to register for Penal Code Section 290, the Court determines that the Defendant has committed a violation of law or violated conditions of parole.  [¶] He is remanded to the custody of the Department of Corrections and Rehabilitation and the jurisdiction of the Board of Parole Hearings for further parole consideration pursuant to Penal Code Section 3000.08 subdivision (h) [(§ 3000.08(h))[2]] . . . ."

---

Arson Registry, and "no registration had occurred" "up until today" (that is, February 7, 2024).  He also spoke with a community service officer from the Antioch Police Department (APD) and was told they had no information that appellant "attempt[ed] to register until January 19th."

Appellant testified as follows.  On December 26, 2023, appellant's parents drove him to the APD early in the morning, so he could register as a sex offender, and he texted his parole officer J. Castillo to tell him what he was doing.  A woman at the APD office told appellant he could not just show up and register and gave him a number to call.  In the APD parking lot with his parents, appellant called the number and left a message with his name, date of birth, and phone number.  The outgoing message from the APD indicated that the APD would return the call to schedule an appointment to register.  On January 18, 2024, Castillo informed appellant he was not registered, and appellant contacted the APD again.  Appellant signed up for classes at Los Medanos College, and he thought he had registered with the police department at the college.  The trial court observed that appellant's testimony about events after the five business days from release had passed was irrelevant, "[b]ut nobody's objected."

[2] Further undesignated statutory references are to the Penal Code.

3

The minute order provides "Prob[able] Cause found as to Violation #1" and "[Defendant] to be remanded to DOC." Appellant filed a notice of appeal on February 15, 2024.[3]

## DISCUSSION

Appellant moves for summary reversal of the order remanding him to the CDCR "on the ground that he was improperly committed to state prison based on a finding of only probable cause that he violated parole." Appellant does not challenge the probable cause finding, but he seeks summary reversal of "the judgment committing appellant to prison based only on a finding of probable cause of a parole violation."

The Attorney General initially filed an opposition letter brief taking the position that, while appellant has been denied the final revocation hearing he is entitled to, the trial court properly remanded him to prison upon a preliminary finding of probable cause. At oral argument, however, the deputy attorney general agreed that the order remanding appellant to prison should be vacated and the matter should be remanded for further proceedings on the parole violation petition. We agree with appellant that the trial court erred in remanding him to prison, and summary reversal is appropriate in this case.

A.    *Penal Code Section 3000.08(h) Does Not Authorize Remand to Prison on a Finding of Probable Cause of a Parole Violation*

"[P]arolees facing revocation are constitutionally entitled to certain due process protections," "includ[ing] the right to a prompt preliminary hearing after arrest to determine whether there is probable cause to believe a parole violation has occurred." (*People v. DeLeon* (2017) 3 Cal.5th 640, 644

---

[3] The notice of appeal states it is an appeal from "Other" "contested parole revocation."

4

(*DeLeon*), citing *Morrissey v. Brewer* (1972) 408 U.S. 471.)  Due process requires a two-stage process.  First, the parolee is entitled to " 'an inquiry . . . in the nature of a "preliminary hearing" to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions.' " (*DeLeon* at p. 654.)  "Second, the parolee must have an opportunity for a final hearing to determine if parole should be revoked." (*Ibid*.)  The actual determination whether the parolee violated parole is made at the second step. (See *Morrissey v. Brewer*, *supra*, 408 U.S. at pp. 479–480.)

"Historically, [the Board of Parole Hearings] was responsible for conducting parole revocation hearings." (*DeLeon*, *supra*, 3 Cal.5th at p. 647.) However, "[u]nder the Realignment Act [of 2011], jurisdiction over most petitions to revoke parole shifted to the superior courts.  [Citations.]  In 2012 the Legislature amended section 1203.2 to incorporate parole into the statutes governing revocation of probation, mandatory supervision, and postrelease community supervision. . . .  [¶] Together, sections 1203.2 and 3000.08 establish a statutory framework for parole revocation." (*Ibid*.)

"Generally, '[u]pon a finding that [a parolee] has violated the conditions of parole,' the trial court is authorized 'to do any of the following: [¶] (1) Return the person to parole supervision with modifications of conditions, if appropriate, including a period of incarceration in a county jail.  [¶] (2) Revoke parole and order the person to confinement in a county jail.  [¶] (3) Refer the person to a reentry court . . . or other evidence-based program in the court's discretion.' (§ 3000.08, subd. (f).)" (*People v. Williams* (2021) 71 Cal.App.5th 1029, 1040 (*Williams*).)

However, "[t]hese options do not exist when the court adjudicates a petition concerning [certain sex offenders], such as [appellant]." (*Williams*,

5

*supra*, 71 Cal.App.5th at p. 1040.)  Instead, under section 3000.08(h), "[n]otwithstanding any other law, if . . . the court determines that [such a] person has committed a violation of law or violated his or her conditions of parole, the person on parole shall be remanded to the custody of the [CDCR] and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration."  (See § 3000, subd. (b)(4) [specifying sex offenses, including § 288, subd. (b)].)  "In other words, once the court finds that a [person convicted of a specified sex offense] has violated parole, revocation is 'mandatory.' "  (*Williams*, *supra*, 71 Cal.App.5th at p. 1040.)

Section 3000.08(h), thus, takes away the trial court's discretion to decide how to treat a parolee *after* the court finds the parolee has violated the conditions of parole, but it does not take away the trial court's obligation to *determine* whether the parolee committed the alleged parole violation in the first place.  This is clear from the language of the statute itself, which requires remand to the CDCR "if . . . the court *determines* that [such a] person has committed a violation of law or violated his or her conditions of parole."  (§ 3000.08(h), italics added.)

The trial court got it exactly wrong.  The trial court's many statements at the hearing demonstrate it thought the Board of Parole Hearings was going to determine whether appellant violated parole in the first instance,[4] but that is not how parole revocation works after realignment, and the parties agree on this point.  Appellant has never been provided the final parole revocation hearing in the trial court to which he was entitled.

---

[4] For example, after the evidence was presented and counsel made their arguments, the trial court began its ruling by stating, "There is a factual basis to hold [V.A.] for his parole violation hearing."

Worse, appellant should not have been remanded to prison based on a mere finding of probable cause. As we have seen, section 3000.08(h) only authorizes the trial court to remand a parolee to prison *after* the court has found that the parolee violated the law or violated the conditions of parole. Remand to the CDCR is required "if . . . the court *determines* that [such a] person has committed a violation of law or *violated his or her conditions of parole*." (§ 3000.08(h), italics added; see *Williams*, *supra*, 71 Cal.App.5th at p. 1040 ["once the court finds that a [person convicted of a specified sex offense] has violated parole, revocation is 'mandatory' "].)

It is undisputed that the trial court in this case never determined that appellant violated his conditions of parole. Accordingly, the trial court clearly erred in relying on section 3000.08(h) as authority to remand appellant to prison in the present circumstances. The statute authorizes and requires remand only after the court has determined the parolee violated conditions of parole, and that determination has not been made in this case.

B.   *Propriety of Granting the Motion for Summary Reversal*

In *People v. Browning* (1978) 79 Cal.App.3d 320, 323 (*Browning*), Division Four of this court recognized the appellate "court has the power to entertain a motion for reversal in an appropriate case," and granted a criminal defendant's motion for summary reversal where it found "per se prejudicial" error. The court noted, " 'A reversal will effectuate two wholesome results, namely: (1) a just determination of the cause pending before this court, the Supreme Court having ruled on the question by which ruling we are bound; and (2) a speedy determination of the appeal.' " (*Ibid.*) In *People v. Geitner* (1982) 139 Cal.App.3d 252, the court observed, "Summary determination of a criminal appeal is very rare," but granted the defendant's motion for summary reversal. (*Id.* at pp. 254–255.)

7

Here, section 3000.08(h) is clear on its face, and the parties agree that appellant should not have been remanded to the CDCR following the probable cause hearing. A just determination of the matter requires reversal of the trial court's remand order because section 3000.08(h) does not authorize remand of a parolee to prison absent a trial court finding that the parolee violated the law or violated conditions of parole. A speedy determination is warranted because appellant has already been in prison for over nine months based on an erroneously issued order of remand to the CDCR. Denying the motion and requiring the parties to file opening, responding, and reply briefs would serve " 'no useful purpose . . . since the ultimate result would be the same.' " (*Browning*, *supra*, 79 Cal.App.3d at p. 323.) For these reasons, granting appellant's motion for summary reversal is appropriate.

## DISPOSITION

Appellant's motion for summary reversal is granted. The trial court's order of February 7, 2024, remanding appellant to the CDCR is reversed, and the matter is remanded to the trial court for further proceedings on the petition for parole revocation. We may direct immediate issuance of the remittitur if the parties so stipulate. (See Cal. Rules of Court, rule 8.272(c)(1),) In light of the parties' agreement that this is the correct disposition, we strongly encourage the parties to so stipulate.

_____

Miller, J.

WE CONCUR:


_____

Richman, Acting P.J.


_____

Desautels, J.


A169970, *People v. V.A.*

9