Filed 6/5/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C101167 |
| v. | (Super. Ct. No. 19FE014370) |
| BRANDON ANDRE KEITH NIXON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Satnam S. Rattu, Judge. Affirmed.

Lindsey M. Ball, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donahue, Assistant Attorney General, Ivan P. Marrs, and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Brandon Andre Keith Nixon was convicted of, among other things, threatening a police officer via social media while on mandatory supervision. As a condition of his postrelease community supervision (postrelease supervision), the trial court prevented defendant from creating a social media account and from using or accessing social media websites, defined as " 'any internet website that allows users to

1

post words or images which are accessible to the public, or to other users of the website.' "

Defendant now challenges the postrelease supervision condition as unconstitutionally vague and overbroad. Although defendant's discharge from postrelease supervision renders this appeal moot, we exercise our discretion to address his contentions and conclude the condition is constitutional.[1] We will affirm the judgment.

BACKGROUND

In 2018, defendant pleaded no contest to carrying a concealed weapon in a vehicle, carrying a loaded firearm, perjury, and two misdemeanor counts of unlawfully possessing ammunition. The trial court sentenced defendant to a split sentence of five years four months, with the first four months to be served in the county jail and the concluding five years to be served on mandatory supervision. This court affirmed the

---

[1] The People move this court to take judicial notice of the fact that defendant was discharged from postrelease supervision on January 17, 2025. We grant the motion. (See *In re Arroyo* (2019) 37 Cal.App.5th 727, 730, fn. 2 [taking judicial notice of Department of Corrections and Rehabilitation records showing an inmate's parole eligibility date for mootness purposes].) We decline, however, the People's invitation to dismiss this appeal as moot. As the People recognize, we have discretion to "decide an appeal, even if moot, to address issues of broad public interest that are likely to recur while evading review." For example, in *People v. Johnson* (2018) 29 Cal.App.5th 1041, the appellate court declined to dismiss a "technically moot" appeal challenging the trial court's extension of the defendant's postrelease supervision even though he was subsequently discharged. (*Id.* at p. 1045; see *People v. DeLeon* (2017) 3 Cal.5th 640, 645-646 [challenge to parole revocation procedures decided even though the defendant's completion of parole rendered appeal technically moot].) Similarly, here, although defendant's discharge from postrelease supervision renders this appeal technically moot, the constitutionality of the challenged social media prohibition is an issue of continuing public interest that is likely to recur and might otherwise evade review due to the fact that a person subject to postrelease supervision must be discharged after completing "one year with no violations" and may be discharged after "six consecutive months with no violations." (Pen. Code, § 3456, subd. (a)(2) & (3).)

judgment in *People v. Nixon* (Sept. 30, 2022, C094767) [nonpub. opn.] review granted December 28, 2022, S277219.

In 2021, while defendant was on mandatory supervision, he was convicted of making a criminal threat. Defendant made the threat using his Facebook account in July 2019. The post featured a picture of three Elk Grove Police Department officers with crosshairs superimposed over the faces of two of the officers. The picture was accompanied by the words: "Fuck both of these bitch ass cops and the Elk Grove Police Department. I hope both of you scum bags are killed in the line of duty and your family members are BRUTALLY murdered." In addition, as relevant to defendant's criminal intent, the prosecution also adduced evidence of many other instances of harassing and threatening social media posts going back to May 2017. This court recounted the evidence supporting defendant's conviction in *People v. Nixon* (Mar. 27, 2023, C094488) [nonpub. opn.] (*Nixon*) and we need not repeat it here. Based on that evidence, a jury found defendant guilty of making a criminal threat against the life of one of the officers depicted in the Facebook post.

After finding that defendant violated his mandatory supervision in the prior case, the trial court executed the sentence previously imposed and also sentenced defendant to a consecutive upper-term sentence of three years for making the criminal threat, for a total prison term of eight years four months. On appeal, this court affirmed defendant's criminal threats conviction, but vacated the sentence and remanded the matter for resentencing. (*Nixon, supra*, C094488.) On remand, the trial court sentenced defendant to an aggregate prison term of seven years four months, replacing the previously-imposed upper term of three years for the criminal threat with a middle-term sentence of two years.

The following month, defendant was released from prison on postrelease supervision, subject to various terms and conditions, including the following: "Defendant shall not knowingly possess, create, use or own social media accounts and

3

electronic devices other than a telephone." Defendant moved the trial court to strike that condition as unconstitutionally vague and overbroad. Regarding the electronic device prohibition, defendant argued that portion of the condition was both vague and overbroad. Regarding the social media prohibition, defendant argued that portion of the condition was overbroad because "[s]ocial media use implicates the fundamental rights of freedom of expression and freedom of association" and "just because social media was the instrumentality of [defendant's] crime does not mean a blanket ban on social media use is carefully tailored."

In response, the People agreed that the electronic device prohibition was vague and recommended the following modification: " 'Defendant shall not knowingly create or use social media accounts, nor possess or use any electronic device that connects to the internet other than publicly accessible computers.' " In all other respects, the People opposed modification of the challenged condition.

After holding a hearing on the motion, the trial court removed the electronic device prohibition and modified the social media prohibition to provide: " 'Defendant shall not use, create, or access social media website accounts. A social media website is defined as 'any internet website that allows users to post words or images which are accessible to the public, or to other users of the website.' "

DISCUSSION

Defendant challenges the postrelease supervision social media condition as unconstitutionally vague and overbroad.

"Although [vagueness and overbreadth] are often mentioned in the same breath, they are conceptually quite distinct. A restriction is unconstitutionally vague if it is not ' "sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.] A restriction failing this test does not give adequate notice . . . of the conduct proscribed. [Citations.] A restriction is unconstitutionally overbroad, on the other hand, if it (1) 'impinge[s] on

4

constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153; see *In re Sheena K.* (2007) 40 Cal.4th 875, 890.) We independently review defendant's constitutional challenges to the social media prohibition. (*People v. Prowell* (2020) 48 Cal.App.5th 1094, 1099 (*Prowell*).)

The challenged condition prohibited defendant from creating a social media account and from using or accessing social media websites, "defined as 'any internet website that allows users to post words or images which are accessible to the public, or to other users of the website.' " Defendant argues the definition "fails to adequately give notice . . . about the websites that he is prohibited from visiting." On the contrary, the condition clearly notified defendant that he could not use or access any website that allows users of the website to post words or images to be viewed by other users or the general public. Defendant objects that the definition does not "clarify whether this includes websites that only provide a commenting function as secondary to the dissemination of information," such as a news website that allows users to post comments at the end of an article. But such a website clearly falls within the definition set forth in the condition because it " 'allows users to post words . . . which are accessible to the public, or to other users of the website.' "

Defendant argues the challenged condition would be "clearer" if it restricted him from using or accessing only "website[s] that serve[] the primary purpose of social networking, such as Facebook, Instagram, LinkedIn, etcetera." Although defendant's preferred definition is narrower, and arguably more in line with common usage of the term "social media," that does not make the broader definition set forth in the challenged

condition unconstitutionally vague.  Indeed, defendant's "vagueness" argument betrays the fact that his real problem with the definition is one of overbreadth.  We conclude the challenged condition is " 'sufficiently precise for [defendant] to know what is required of him, and for the court to determine whether the condition has been violated.' "  (*In re Sheena K., supra*, 40 Cal.4th at p. 890.)

Turning to overbreadth, defendant argues that prohibiting him from using and accessing not only "traditional social networking sites," such as Facebook and Instagram, but also "social media enabled websites," such as a news website that enables user comments, is unconstitutionally overbroad because it impinges on his First Amendment rights and is not narrowly tailored.  We disagree.

" 'A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more.' [Citation.]  An important forum for such communication today is found on social media, and 'to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.' "  (*Prowell, supra*, 48 Cal.App.5th at pp. 1099-1100, quoting *Packingham v. North Carolina* (2017) 582 U.S. 98, 104 [198 L.Ed.2d 273].)

However, the fact that the social media prohibition in this case impinges on defendant's constitutional rights does not make it "per se overbroad."  (*Prowell, supra*, 48 Cal.App.5th at p. 1100.)  For example, in *Prowell*, where the defendant was convicted of harassment based in part on his use of social media, this court concluded that a probation condition prohibiting the use of social media amounted to "a close fit between the legitimate purpose of the restriction—i.e., the reformation and rehabilitation of [the defendant]—and the burden that such a condition would impose on [the defendant] for the duration of the probationary term."  (*Id*. at p. 1101.)  As we explained, "[u]nder these circumstances, where defendant used social media to perpetrate the crime for which he is on probation, gathered information on the victim and her family through social media,

6

had inappropriate contacts with the victim's friends through social media, and continued to use social media to discuss this case even after conviction, it is appropriate and constitutionally sound to impose such a complete prohibition." (*Ibid.*)

Here, as defendant acknowledged in the trial court, "social media was the instrumentality of [his] crime." He used it to make the death threat for which he was convicted and ultimately placed on postrelease supervision. And the evidence adduced against him at trial included many other harassing and threatening social media posts. (*Nixon, supra*, C094488.) As in *Prowell*, a complete social media prohibition amounts to a close fit between the compelling state interest in reforming defendant's conduct and the burden imposed on his First Amendment rights.

Defendant's reliance on *In re L.O.* (2018) 27 Cal.App.5th 706 is misplaced. There, the appellate court "relied on *Packingham* to invalidate as facially unconstitutional a probation condition [prohibiting social media access] imposed on a minor convicted of battery." (*Prowell, supra*, 48 Cal.App.5th at p. 1100; see *In re L.O., supra*, 27 Cal.App.5th at pp. 708, 711-713.) In *Prowell*, this court rejected "the conclusion in *In re L.O.* that a probation restriction on accessing social media sites is unconstitutional in every potential application" (*Prowell,* at p. 1100), and concluded the social media prohibition in *Prowell* was "sufficiently tailored to the state's legitimate interest in reformation and rehabilitation." (*Id.* at p. 1101.) We reach the same conclusion here.

Finally, defendant argues that the "analysis in [*Prowell*] tends to presuppose that a social media website is a website that serves the primary function of social networking, such as Facebook, and not just any website that is enabled for comments by users." We acknowledge that the social media prohibition at issue in *Prowell* did not broadly define social media websites to include any website that allows users to post public comments. (See *Prowell, supra*, 48 Cal.App.5th at p. 1098 [prohibiting the use of " 'any social media sites or apps[,] including but not limited to Twitter, Facebook, Instagram' "].) However,

7

the fact that the prohibition challenged in *Prowell* was arguably narrower does not make the prohibition challenged in this case overbroad.  Here, where defendant used social media to make death threats, the trial court could have reasonably concluded that any website that allows public comments could be similarly used by defendant.  Preventing such use for the limited period of defendant's postrelease supervision undeniably impinges on defendant's constitutional rights, but no more so than is reasonably necessary to protect the state's compelling interest in reforming defendant's conduct. (See *In re E.O., supra*, 188 Cal.App.4th at p. 1153 [noting "that perfection in such matters is impossible, and that practical necessity will justify some infringement"].)

DISPOSITION

The judgment is affirmed.


 

 

                                                             /S/

                                                      MAURO, Acting P. J.



We concur:



    /S/

DUARTE, J.



    /S/

KRAUSE, J.